RICHARD L. KAREN *v.* KAREN PARCIAK-KAREN
(14066)

Heiman, Hennessy and Glass, Js.

Argued October 30, 1995—decision released March 26, 1996

*Joseph A. O'Brien,* for the appellant (plaintiff).

*Bruce S. Beck,* for the appellee (defendant).

GLASS, J. In this dissolution action, the plaintiff, Richard L. Karen, appeals from the trial court's assignment of certain funds to the defendant Karen Parciak-Karen. The plaintiff claims that the trial court abused its discretion and improperly held (1) that the plaintiff made an inter vivos gift to the marital estate when he converted certain bank accounts, formerly in the plaintiff's name alone, to joint bank accounts in the names of the plaintiff and the defendant, and (2) that the defendant was entitled to have assigned to her a portion of the plaintiff's inheritance. We affirm the judgment of the trial court.

The trial court found the following pertinent facts. The parties were married in Manchester on May 5, 1984. At the time of the marriage, the plaintiff was employed by the Connecticut department of revenue services. In late 1985 or early 1986, the plaintiff terminated his employment with the state and became involved in the sale of real estate in the Manchester area. The defendant managed a family restaurant in Manchester from approximately 1977 until it was sold in 1993. The defendant is also a licensed real estate broker and appraiser.

The defendant testified at trial that the plaintiff stopped working in 1989 when his mother became ill, and that the defendant supported the plaintiff by working two jobs. In 1990, the plaintiff was appointed conservator for his mother, who later died on February 13, 1991. As a result of her death, the plaintiff became the sole owner of several bank accounts totaling $384,117, that had been held by the plaintiff's mother in survivor-

ship with the plaintiff. Since the plaintiff's mother was the sole contributor to these accounts, it was conceded that these accounts were 100 percent taxable for Connecticut succession tax purposes.

Although the parties had no children of their marriage, two children were placed with the parties in July, 1991, in accordance with a joint plan to adopt them. Both of these children have long standing emotional problems.[1]

Shortly after the children were placed with the parties for adoption, the plaintiff began a series of consultations with a representative of Mechanics Savings Bank relative to the investment of money that he inherited from his mother. The defendant was present at some of these meetings. As a result of these consultations, several investment accounts were established using the funds inherited by the plaintiff. Two of these accounts, the Keystone B-1 account and the Van Kampen Bond Fund, with a total current value of $262,256, were converted by the plaintiff from his name alone to the joint names of the plaintiff and the defendant.[2]

The trial court determined that the plaintiff's action of converting these two funds from the plaintiff's name alone to the joint names of the plaintiff and the defendant created "a rebuttable presumption that [the] plaintiff intended to make a gift of that property to the marital estate." The trial court determined that the evidence was lacking to indicate that the plaintiff did not intend a gift when he converted the two accounts. The trial court therefore concluded that these two funds should

[1] The parties separated in February, 1992. In February, 1993, after repeated requests by the defendant, the plaintiff gave his approval to the adoption of the children solely by the defendant.

[2] Another Keystone B-1 account, in the amount of $46,288, remained in the plaintiff's name alone, and was excluded by the trial court from consideration as a divisible part of the marital estate. This account is not at issue in this appeal.

be considered a part of the marital estate[3] and assigned pursuant to General Statutes § 46b-81 (c).[4] The trial court also considered the relevant statutory criteria contained in § 46b-81 (c), and noted that the responsibility for the breakdown of the marriage rested with the plaintiff. It further compared the yearly income of the parties, and concluded that the defendant's contribution to this portion of the marital estate "far and away exceeds that of [the plaintiff]."[5]

The total marital estate determined by the trial court to be available for assignment was $372,710. This total consisted of $110,454, representing the estate excluding the funds, and $262,256, representing the total amount of funds in the two investment accounts in the joint names of the plaintiff and the defendant. The court

---

[3] The inherited funds in the two joint investment accounts, along with the equity in the marital home, together with related personal property acquired by the parties during their eight years together, comprise the principal assets of the marital estate.

[4] General Statutes § 46b-81 (c) provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[5] The trial court's use of the term "defendant" in the context of this sentence was an obvious typographical error.

The employment income of each spouse from 1985 through 1991 was determined by the trial court to be as follows:

| Year | Plaintiff's Income | Defendant's Income |
| --- | --- | --- |
| 1985 | $29,250 | $28,080 |
| 1986 | 7,306 | 32,920 |
| 1987 | None | 34,950 |
| 1988 | 3,376 | 34,300 |
| 1989 | 6,769 | 33,800 |
| 1990 | 10,802 | 33,800 |
| 1991 | None from employment | 36,976 |

assigned to the plaintiff 20 percent of the marital estate excluding the funds, or $22,091. The court assigned to the defendant the remaining 80 percent of the estate excluding the funds, or $88,363. The court assigned to the plaintiff 67 percent of the total amount of the two joint investment accounts, or $175,712, and assigned to the defendant 33 percent, or $86,544, of these accounts. In sum, the trial court assigned to the plaintiff $197,803 of the $372,710 marital estate. The court assigned $174,907, the balance of the marital estate, to the defendant.[6] The trial court declined to award either spouse alimony or counsel fees.

This appeal by the plaintiff challenges only the assignment to the defendant of $86,544 of the investment account funds in the joint names of the plaintiff and the defendant. The trial court, in its decree, made various other orders, none of which is at issue in this appeal.

I

The principal claim of the plaintiff is that the trial court improperly determined that, in converting two of his inheritance fund accounts from his name alone to his and the defendant's joint names, he made an inter vivos gift to the marital estate. In support of this claim, the plaintiff argues that "there is no evidence that [he] relinquished control over the accounts in question," and, further, "[t]here was no evidence that [the] defendant ever withdrew or deposited any money from or to these accounts and no evidence that [the] defendant could make withdrawals without the plaintiff's consent." The plaintiff concludes that "[s]ince [he] did not relinquish possession or control of these accounts, there is insufficient evidence on which the court could find that a valid inter vivos gift was made."

[6] It is significant to note here that the court determined that the parties have an equal opportunity for the future acquisition of capital assets and income.

The plaintiff's argument implies that if the defendant is not the owner of all or any part of the investment fund accounts, the trial court would be powerless to assign to the defendant all or any part of the funds. The plaintiff's argument and its implication misses the mark, and has been previously rejected by statute; General Statutes § 46b-81 (a);[7] as well as by the Connecticut Supreme Court in *North* v. *North*, 183 Conn. 35, 39, 438 A.2d 807 (1981). Under § 46b-81 (a), property assignment is not restricted to the spouse that owns the property. Once it is determined that the property is part of the "estate" of either the husband or wife, the only limitation on the trial court's power of assignment is General Statutes § 46b-81 (c).[8] Moreover, our Supreme Court has stated: " '§ 46b-81 confers broad powers upon the [trial] court in the assignment of property. It provides, in part, that the court "may assign to either the husband or wife all or any part of the estate of the other." Among the factors to be considered in any order entered under § 46b-81 are the "estate, liabilities and needs of each of the parties." . . . In this context, the "estate" of the parties, as referred to in the statute, comprehends the aggregate of the property and liabilities of each.' This includes any property a party may have received by reason of inheritance." *North* v. *North*, supra, 39.

Because it is uncontroverted that these two investment accounts were included in the plaintiff's inheritance, and since the trial court under § 46b-81 (a), "may

---

[7] General Statutes § 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect."

[8] See footnote 4.

assign to either the husband or wife all or any part of the estate of the other," we conclude that it is unnecessary to decide whether the plaintiff made a gift to the defendant when he converted these two accounts from his name alone to his and the defendant's joint names. The trial court correctly determined that these two investment accounts were part of the marital estate and subject to assignment pursuant to General Statutes § 46b-81.

II

The plaintiff's second and final claim is that the trial court abused its discretion by assigning a portion of the plaintiff's inheritance to the defendant. Before addressing this claim, it is helpful to state the standard of review in family relations cases.

" 'The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact.' *Graham* v. *Graham*, 25 Conn. App. 41, 47, 592 A.2d 424, cert. denied, 220 Conn. 903, 593 A.2d 969 (1991). It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. *Solomon* v. *Aberman*, 196 Conn. 359, 378, 493 A.2d 193 (1985)." *Rummel* v. *Rummel*, 33 Conn. App. 214, 220, 635 A.2d 295 (1993). "The trial court is accorded wide discretion in determining the proper allocation of the assets of the parties. . . . [G]reat weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Citations omitted; internal quotation marks omitted.) Id., 220–21.

The plaintiff appears to rely on *Jackson* v. *Jackson*, 17 Conn. App. 431, 553 A.2d 631 (1989), to support his claim that the trial court improperly assigned a portion of his inheritance to the defendant. His argument implicitly asserts that the value of the property at the time of inheritance should be assigned to the spouse receiving the property by inheritance, and the other spouse, at most, should share in the preservation and appreciation of the property.

In *Jackson*, the husband inherited real property in 1977 valued at $25,000 for probate purposes. The appraised value of the property at the time of the dissolution was $102,400. The trial court awarded the wife $35,500, which represented one half of the appreciation on the property since the time that the husband had inherited the property, less a 6 percent real estate commission. Id., 432–33. The plaintiff concedes that the facts of *Jackson* are much different from those in this case. He argues, however, that, although *Jackson* implies that under § 46b-81 inherited property could be assigned from one spouse to the other, the *Jackson* court did not elaborate further.

In our view, the trial court in *Jackson*, like the trial court in this case, exercised that broad discretion conferred on it by § 46b-81.[9] In the past, we have declined to pronounce a draconian rule concerning the assignment of inherited property. We likewise reject that invitation today. "The ultimate question on appellate review is whether the trial court could have concluded as it

---

[9] The plaintiff also cites *Ashton* v. *Ashton*, 31 Conn. App. 736, 627 A.2d 943 (1993), cert. denied, 228 Conn. 901, 634 A.2d 295 (1994), *Bonelli* v. *Bonelli*, 22 Conn. App. 248, 576 A.2d 587, cert. denied, 216 Conn. 819, 581 A.2d 1054 (1990), and *Papageorge* v. *Papageorge*, 12 Conn. App. 596, 533 A.2d 229 (1987), in support of his claim that the trial court improperly assigned a portion of his inheritance to the defendant. The trial court in those cases, however, was similarly exercising its discretion after weighing the factors enumerated by statute regarding the assignment of property.

did. *Dubicki* v. *Dubicki*, 186 Conn. 709, 713, 443 A.2d 1268 (1982). Examination of the record, the appellate briefs and consideration of the parties' oral arguments does not persuade us that the trial court abused its discretion." *Brown* v. *Brown*, 36 Conn. App. 597, 601, 652 A.2d 527, cert. denied, 232 Conn. 917, 655 A.2d 260 (1995).

The judgment is affirmed.

In this opinion the other judges concurred.